Argued and submitted October 10, 2011, affirmed August 22, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

v.

DARREN PAUL POLLOCK,
*Defendant-Appellant.*

Lane County Circuit Court
200908796; A143631

284 P3d 1222

Kenneth A. Kreuscher argued the cause for appellant. With him on the brief was Portland Law Collective, LLP.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant, who was convicted after a jury trial of six counts of first-degree sodomy, assigns error to the trial court's admission of the victim's out-of-court statements that defendant had sexually abused her. We conclude that the trial court did not err and affirm.

In the summer of 2007, defendant was living with his then-girlfriend. He stayed home during the day with his daughter and stepdaughter, and also babysat the neighbor's three-year-old daughter, the victim in this case.

The victim and her mother moved to a different neighborhood in August 2007 and did not socialize with defendant or his girlfriend after that. In April 2008, defendant's then-former girlfriend visited the victim's mother. The two women arranged a play date for their daughters. After defendant's former girlfriend left, and while riding in the back seat of the family car, the victim asked her mother where defendant was. The victim's mother told the victim that she probably would never see defendant again. At that point, the victim told her mother that defendant "used to let me put where he goes pee and poop in my mouth." The victim told her mother that that occurred "every day when you went to work * * * in [defendant's] room where I took a nap."

The victim's mother contacted the police. A detective arranged for the victim to be interviewed by Kids First Center of Lane County, an organization that interviews and counsels child victims of abuse. A police detective sat in a separate room and observed an interview of the victim by a child welfare caseworker from Oregon Department of Human Services. The victim gave a statement describing defendant's acts of sodomy, describing how he would put his penis in her mouth and "pee" on her face. Kids First Center made a DVD of the interview.

At trial, the state called the victim, who was then five years old, as its first witness, but did not ask her specifically about the alleged abuse. The state did, however, ask the victim on direct examination if she remembered the statements that she had made on the DVD and whether

they were true, and the victim responded affirmatively to both questions. Defense counsel then questioned the victim briefly, including asking her whether she remembered saying the things on the DVD and whether she had also talked to her mother and a detective about those things, and the victim answered affirmatively. Defense counsel had no other questions for the victim. The victim remained available to testify. The state then called the Kids First interviewer and offered the DVD of the interview into evidence. At the close of the state's case-in-chief, the prosecutor played the video for the jury. Defendant objected to the admissibility of the video under the Sixth and Fourteenth Amendments to the United States Constitution, as violative of his right to confrontation. The trial court overruled the objection.

Also during the state's case-in-chief, the state called the victim's mother to testify concerning her conversation with the victim in the car. Defendant again objected, contending that the admission of the evidence violated defendant's right to confrontation under the Sixth and Fourteenth amendments. The court overruled the objection and admitted the testimony.

On appeal, in a combined argument, defendant contends that the decision to admit the victim's prior out-of-court statements, either by way of the video or through the testimony of her mother, violated defendant's confrontation clause rights under the Sixth Amendment, as interpreted by the United State Supreme Court in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Defendant argues that both statements were "testimonial" and that defendant did not have an adequate opportunity to cross-examine the victim about them, because the state did not directly elicit the victim's testimony at trial concerning the content of the statements and, thus, the victim was not "available" for cross-examination about those statements.[1]

We review the constitutional implications of the trial court's evidentiary rulings for errors of law, *State v.*

---

[1] Defendant does not challenge the trial court's rulings that the statements are admissible under OEC 803(18a)(b) or that the state confrontation clause does not bar their admission. He relies solely on the Sixth Amendment.

*Mack*, 337 Or 586, 590, 101 P3d 349 (2004), and consider each evidentiary ruling in turn.

The state acknowledges that the statements that the victim made during the Kids First interview were testimonial. *State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 626-27, 215 P3d 847 (2009). The state notes, however, that the confrontation clauseeee guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 US 15, 20, 106 S Ct 292, 88 L Ed 15 (1985). In the state's view, defendant had an adequate opportunity to question the victim about her statements. The state points out that, on direct examination, the victim adopted the statements that she had made during her Kids First interview and testified that they were true. Defendant did not object and, in fact, cross-examined the victim, asking her whether she had made the statements, but did not question her in any detail about the statements.

Defendant contends that he nonetheless did not have an adequate opportunity to cross-examine the victim about her out-of-court statements, because she was, in effect, "unavailable" for cross-examination on the inculpatory evidence, due to the prosecutor's failure to have elicited that evidence directly from the victim before introducing the DVD.[2] Defendant contends that, by not asking the victim directly about the abuse, the prosecutor effectively placed on defendant the burden to elicit the inculpatory testimony that he sought to impeach, a burden that he contends violated his right to confrontation. Defendant cites decisions from other jurisdictions holding that it is the state's burden to elicit damaging testimony from a witness so that the defendant may cross-examine the witness if he so chooses. *See, e.g.*, *State v. Rohrich*, 132 Wash 2d 472, 478, 939 P3d 697 (1997) (where prosecutor introduced evidence only by way of hearsay and victim was not asked

---

[2] We reject the state's contention that defendant did not adequately preserve his arguments because, although he raised the confrontation clause, he failed to make the precise contention below that he was prevented from questioning the victim about her statements because the state had not adequately elicited them on direct examination.

about and did not testify about alleged abuse, defendant's right to confrontation was violated; "[t]he State's failure to adequately draw out testimony from the child witness before admitting the child's hearsay puts the defendant in 'a constitutionally impermissible Catch-22' of calling the child for direct or waiving his confrontation rights. *Lowery v. Collins*, 996 F2d 770, 771-72 (5th Cir 1993).").

Although we agree with defendant that the state's decision not to question the victim in detail about the statements on the DVD placed on defendant the burden to weigh the advantages and disadvantages of cross-examining the victim specifically about her statements, we conclude that the state's tactical decision did not limit defendant's right to confrontation in this case. The choice whether and to what extent to cross-examine a witness always requires a weighing of benefits and risks. But where, as here, the victim has taken the witness stand and is available for cross-examination, the confrontation clause is not implicated.[3] Specifically, the victim's adoption on direct examination of the statements on the DVD provided defendant with an adequate opportunity to cross-examine her as to the content of those statements. Defendant in fact cross-examined the victim, but did not ask questions about the statements that she had adopted. Defendant also chose not to recall the victim for cross-examination although he could have after the prosecutor played the DVD. *See* OEC 806.[4] Those decisions were defendant's choice but did not impair his right to confront a witness against him. *See Crawford*, 541 US at 59 n 9 (when the declarant appears for cross-examination, the confrontation clause places no constraints at all on the use of prior testimonial statements).

Defendant asserts for the same reasons that the trial court erred in admitting the victim's mother's testimony concerning statements that the victim made to her in the

---

[3] We reach no conclusion as to whether the confrontation clause might be implicated if the defendant were required to illicit inculpatory evidence from the victim on direct examination.

[4] OEC 806 provides, in part:

"If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination."

car. The state responds that, unlike the victim's statements to Kids First, the victim's statements to her mother were not testimonial and that that issue is dispositive. We agree with the state.

As the Supreme Court explained in *S. P.*, 346 Or at 613-25, whether a statement made by an unavailable child victim is testimonial depends on "an objective analysis of the contents and circumstances of the statement," which includes a variety of considerations, including the primary purpose of the interrogation, the primary purpose of the declarant, and the nature and extent of police or prosecutorial involvement. Citing *State v. Mechling*, 219 W Va 366, 376, 633 SE 2d 311 (2006), defendant asserts that, although the victim's statements were not elicited for law enforcement purposes, the statements to her mother were the "functional equivalent" of testimony, because they were made under circumstances that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. As defendant acknowledges, however, citing *Crawford*, 541 US at 51, *Mechling* also holds that "functional equivalents" of testimony do not include casual remarks to an acquaintance, friend, or family member, even if the statement happens to inculpate a defendant. Here, we have no difficulty concluding that the victim's statements, spontaneously made to her mother during conversation while riding in the back seat of the family vehicle and without law enforcement presence, were not testimonial. Accordingly, we conclude that the trial court properly admitted them.

Affirmed.