No. 574          August 14, 2024          413

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LUIS ALBERTO SALAS-JUAREZ,
*Petitioner-Appellant,*

*v.*

Susan WASHBURN,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV150526; A177456

Daniel J. Hill, Judge.

Submitted December 20, 2023.

Jedediah Peterson and O'Connor Weber, LLC, filed the brief for appellant.

Lisa M. Udland, Deputy Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Petitioner appeals from a judgment that denied his petition for post-conviction relief. On appeal, he raises seven assignments of error that rest on claims that trial counsel provided inadequate and ineffective assistance of counsel and that he was actually innocent. For the reasons below, we affirm.

A petitioner claiming inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution has the burden "to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Under the federal standard, a petitioner is required to "show that counsel's representation fell below an objective standard of reasonableness" and that as a result, petitioner was prejudiced. *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984). As the Oregon Supreme Court has recognized, those standards are "functionally equivalent." *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

We review the post-conviction court's decision for legal error. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). "A post-conviction court's findings of historical fact are binding on this court if there is evidence in the record to support them." *Id.*

In 2006, petitioner was charged with murder and attempted murder based on a fight in which one victim was stabbed and attempts were made to stab a second victim.[1] Petitioner was convicted, but that conviction was reversed on appeal. *State v. Salas-Juarez*, 349 Or 419, 245 P3d 113 (2010). Petitioner was convicted again after a retrial, and we affirmed his conviction and sentence. *State v. Salas-Juarez*, 264 Or App 57, 59, 329 P3d 805, *rev den*, 356 Or 575 (2014).

Thereafter, petitioner pursued post-conviction relief, challenging trial counsel's representation, and was

---

[1] A detailed recitation of the facts can be found in *State v. Salas-Juarez*, 264 Or App 57, 59-61, 329 P3d 805, *rev den*, 356 Or 575 (2014).

unsuccessful. This appeal followed. We address each of petitioner's seven assignments of error below.[2]

*Failure to object to improper closing arguments (Assignments of Error 1 and 3):* Petitioner challenges the post-conviction court's denial of claims 20F and 20R, in which he argued that counsel provided inadequate and ineffective assistance when counsel failed to object to the prosecutor's improper closing arguments. He argues that counsel should have objected to the prosecutor's improper statements regarding the presumption of innocence, and that counsel should have objected when the prosecutor shifted the burden of proof to petitioner by comparing the number of witnesses that each party called.[3]

Petitioner first challenges the portion of the prosecutor's closing argument in which the prosecutor stated:

"They are saying, 'Well, Tim Russell is the real killer.' They do not have to prove a thing. Not a thing. Zero. They do not have to prove anything. It is my burden. So if I seem like I am harping on the evidence it is because I have to convince you but I do not think I have to anymore, because when whatever (Inaudible) said, 'Hey, as [petitioner] sits here right now, is he guilty or innocent?' the correct answer was, 'He's presumed innocent.' When is he presumed

---

[2] Petitioner advances a "combined argument" for his first through sixth assignments of error but does not identify which assignment of error addresses which post-conviction court ruling, nor does he identify what claims the rulings addressed, beyond an alphanumeric notation, such as claim 20N. In addition, the court has expended considerable time ascertaining which arguments in the "combined argument" section relate to each assignment of error, because petitioner's brief does not clearly indicate which assignments were combined. Although petitioner's brief technically complies with our rules of appellate procedure, its approach is unhelpful for the court. Nonetheless, we have addressed each assignment of error, aside from petitioner's challenge to the post-conviction court's denial of his claim 20V in Assignment of Error 4, in which he challenged counsel's failure to object to racist comments in a 9-1-1 call. Despite summarily mentioning the claim, petitioner presents no argument. Accordingly, we do not address it. *See Beal Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

[3] The record demonstrates that trial counsel made a strategic decision not to move for mistrial. Therefore, at most, petitioner's claims challenge trial counsel's failure to address the prosecutor's improper statements by objecting and moving to strike or requesting curative instructions.

innocent? Before what? Until the State has proven beyond a reasonable doubt. The State has proven its case. It is proven beyond a reasonable doubt. *As he sits there, now, he is guilty. Presumption of innocence was at the beginning.*

"You have heard the evidence, now you can deliberate and make that determination."

(Emphasis added.)

As the post-conviction court correctly found, and as the state concedes, the prosecutor incorrectly stated the law when he said, "As [petitioner] sits there, now, he is guilty. Presumption of innocence was at the beginning." The presumption of innocence does not end at the conclusion of the evidentiary presentations. It extends until the jury returns its verdict. *Salas-Juarez*, 264 Or App at 70 ("[W]hen the prosecutor stated—without objection by defendant—during closing argument that '[a]s [defendant] sits there, now, he is guilty. Presumption of innocence was at the beginning.' The prosecutor misstated the law[.]"); *see also State v. Worth*, 231 Or App 69, 77, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (explaining that "the presumption [of innocence] continues past the 'start' of deliberations; it remains in place until deliberations are complete").

We do not decide whether trial counsel's failure to object to the improper statement constituted deficient performance, because we conclude that petitioner did not demonstrate that he "suffered prejudice as a result" of trial counsel's conduct. *Trujillo*, 312 Or at 435. Because counsel made a strategic decision not to move for a mistrial, the possible remedies petitioner could have received are a curative instruction or to have the testimony stricken from the record. In the context of this case, petitioner did not demonstrate that the absence of a curative instruction or striking the testimony tended to affect the verdict, *Montez*, 355 Or at 7, or that there was a reasonable probability that a curative instruction or striking the testimony would have led to a different trial outcome. *Strickland*, 446 US 668. The improper statement was brief and occurred in the middle of the prosecutor's initial closing argument. In addition, both before and after making the improper statement, the prosecutor correctly stated that the state had the burden of proof

in the case. The court also correctly instructed the jury on the burden of proof, and in trial counsel's closing argument, they emphasized that the burden of proof laid with the state. Because petitioner did not demonstrate prejudice, the post-conviction court did not err in denying relief on this claim.

Petitioner also claims that counsel was ineffective for failing to object to the prosecutor's statements regarding the number of defense witnesses. Specifically, petitioner takes issue with the following three statements made by the prosecutor during closing arguments: "[The defense] put on two witnesses. And only two witnesses."; "[Y]ou have seen 37 witnesses over nearly a week, here—35 for the state and two for the defense[.]"; and "How was the State's case controverted? I want you to think about that. There are two witnesses that came in."

Petitioner argues that those statements suggested to the jury that petitioner had a burden to present evidence, and that he failed to meet that burden. To determine whether those statements did, in fact, shift the burden of proof onto petitioner, and whether counsel's failure to take curative action was ineffective or inadequate, we must examine each statement in context.

The prosecutor made the first statement near the start of the state's closing argument. Trial counsel objected to that statement and argued that the prosecutor was trying to shift the burden of proof. The trial court overruled that objection, ruling that the particular argument was permissible. Thus, trial counsel was not inadequate in the manner asserted by petitioner.

As to the remaining two statements, we conclude that, viewed in context, the statements did not impermissibly shift the burden of proof to petitioner. The prosecutor's second statement was not an overt attempt at placing a burden on petitioner but was part of a description of the evidence the jury had received. Similarly, the prosecutor's third statement introduced the state's argument, which discussed each defense witness and explained why the jury should not find the testimony persuasive and why the state's evidence was more persuasive. Thus, trial counsel did not perform

inadequately when he did not object to those specific statements or move to strike them.

In sum, the post-conviction court did not err in denying relief on claims 20F and 20R.

*Failure to object to vouching by Detective Young and the prosecutor (Assignment of Error 2):* Petitioner argues that the post-conviction court erred when it denied relief on claim 20N. In that claim, petitioner argued that trial counsel was ineffective and inadequate for failing to object to testimony of Detective Young that vouched for the truthfulness of another witness and a related statement by the prosecutor in closing about the credibility of Young.

Petitioner argues that two statements by Young were impermissible vouching to which counsel should have objected. First, petitioner argues that Young vouched for Russell's credibility when, in the course of discussing his interview with Russell, he explained that when interviewing people:

"[T]he most important thing, is look at how they're answering your questions. As—not as much as what's being said, how it's being said, and what's going on during the interview. Are they directly answering your questions."

Vouching falls into two categories: direct and indirect. Direct or "true" vouching occurs when one witness directly comments on the credibility of another witness. *State v. Corkill*, 262 Or App 543, 552, 325 P3d 796, *rev den*, 355 Or 751 (2014). Indirect vouching occurs when one witness conveys their opinion about the truthfulness of another witness without directly commenting on the other witness's credibility. *Waldorf v. Premo*, 301 Or App 572, 577, 457 P3d 298 (2019), *rev den*, 366 Or 451 (2020) (explaining that "testimony that falls short of 'true vouching' is nonetheless impermissible when it conveys the speaker's opinion as to the credibility of another witness"). Young's statement is neither direct nor indirect vouching. As a result, counsel did not perform deficiently when he did not object to that testimony.

Petitioner additionally asserts that Young impermissibly vouched for Russell during the following exchange:

> "[Prosecutor]:   From an investigative standpoint, what was the next thing that occurred during the proffer, that you felt was of interest to you, as a detective, a case agent?
>
> "[Young]:   That the information I had to that point, from the witness statements, to what I knew of the scene, again, this is on August 22nd, I did not find Mr. Russell's statement to be evasive or—and it appeared to fit with the circumstances, it appeared to be truthful, to me."

The superintendent argues that the detective's testimony was admissible under *State v. Chandler*, 360 Or 323, 380 P3d 932 (2016), because the state did not solicit the statement for its truth, but rather for the non-opinion purpose of providing context for the investigation.

We do not need to decide whether the testimony was inadmissible vouching or admissible evidence. Even if the testimony was inadmissible vouching, trial counsel's testimony in the post-conviction hearing supports that he made a reasonable strategic decision not to object. Counsel testified that in retrospect, he "certainly could have * * * kept [Young] a little more honest in terms of where they were going with Russell," but "[f]or the most part, Mr. Russell's statement wasn't objectionable to us." He also explained that Young's trial testimony "fit into" the defense theory that police incorrectly and exclusively focused on petitioner, not Russell, as the assailant. Evidence that the police believed Russell and treated him as a witness, rather than a codefendant, bolstered that defense theory. Accordingly, trial counsel did not perform deficiently when he did not object to Young's testimony and the post-conviction court did not err in denying relief on that basis.

Petitioner additionally argues that the prosecutor vouched for Russell in closing argument when the prosecutor said:

> "There are reasons we do what we do. I cannot sit here and explain to you, because you are going to, you know, tune out all the reasons that things were done. I tried to do that through [Young] to show you the process that we went through to arrive at the situation we are at, now. But there are things that go into years of having training and experience in building cases."

Petitioner argues that statement was "tantamount" to vouching for Russell because it suggested that Young was qualified to determine if someone was telling the truth or lying. We disagree. That argument is neither direct or indirect vouching because there is no readily discernable link between the prosecutor's argument and Young's statement that he believed Russell was truthful. Moreover, trial counsel had a reasonable strategic reason not to object to a discussion that the state relied on Young's investigative process, because it "fit into" the defense theory that the state was relying on a fundamentally flawed investigation.

We therefore conclude that petitioner did not prove either deficient performance or prejudice on either argued basis, and the post-conviction court did not err when it denied relief on claim 20N.

*Failure to object to vouching by Detective Ivens (Assignment of Error 5):* Petitioner challenges the post-conviction court's denial of claim 20L, in which he argued that trial counsel was ineffective for not objecting when Detective Ivens vouched for Russell's credibility while discussing Russell's composure during interviews.

Petitioner argues that two of Ivens's statements about Russell amounted to vouching. In the first, during direct examination by the state, Ivens testified:

"And at that point—you know—in looking back now, I think I probably shouldn't have asked [Russell] if I could tape record him right out of the hole, because I think it scared him. And he immediately said, I think I'd like to speak with an attorney. Yes, I was present the night of the stabbing, but I think I need to seek counsel before I say anything else."

In the second, when defense asked on cross examination whether Russell "seemed nervous" when Ivens talked to him, Ivens testified:

"I—I think that police presence makes people uncomfortable no matter whether they're a suspect or a witness. I wouldn't say that [Russell] was shaking, but I mean, I—I could tell that it was probably not a real comfortable situation for him, yes."

Petitioner asserts that both statements "suggested that Russell's invocation of his right to counsel was not because of guilt, but rather because he was nervous," and that such testimony was "tantamount to vouching for his credibility."

We conclude that Ivens's statements are neither direct nor indirect vouching because Ivens in no way conveyed his opinion about Russell's truthfulness. As a result, counsel did not perform deficiently when he did not object to that testimony, and the post-conviction court did not err in denying relief on claim 20L.

*Failure to properly object and make a record regarding attempted impeachment of a state's witness (Assignment of Error 6):* Petitioner argues that the post-conviction court erred in denying claim 20O, in which petitioner asserted that trial counsel failed to make a proper offer of proof and develop a record about how counsel could have used a treatise to impeach one of the state's witnesses. But in his post-conviction case, petitioner did not provide any evidence of what that offer of proof or record would have been. Moreover, the evidence that petitioner wanted at the trial was already introduced through another witness's testimony. On this record, petitioner did not establish deficient performance or prejudice, and the post-conviction court did not err in denying relief on claim 20O.

*Actual innocence (Assignment of Error 7):* Petitioner challenges the post-conviction court's ruling that a claim for actual innocence was not cognizable in a post-conviction case, either as a stand-alone claim for relief or as a procedural pathway to allow consideration of otherwise barred claims. We do not need to decide whether petitioner can raise a claim of actual innocence in a post-conviction case, because the only evidence on which petitioner relies to establish his innocence is his own testimony, and the post-conviction court correctly found that his testimony was insufficient to prove that claim.

Affirmed.